AO 106 (Rev. 01/09) Application for a Search Warrant

# United States District Court
### for the
### Western District of New York



UNITED STATES DISTRICT COURT
FILED
OCT 1 3 2015
MICHAEL J. ROEMER, CLERK
WESTERN DISTRICT OF NY

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address.)*

Google, Inc. e-mail and communication
account associated with underline dwmiedel@gmail.com
stored at a premises owned, maintained, controlled,
or operated by Google, Inc., headquartered at
1600 Amphitheater Parkway, Mountain View, California,
more particularly described in Attachment A.

Case No. 15-M - 4168

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer, request a search warrant and state under penalty of perjury that I have reason to believe that there is now concealed on the following person or property located in the Western District of New York *(identify the person or describe the property to be searched and give its location)*:
Google, Inc. e-mail and communication account associated with dwmiedel@gmail.com stored at a premises owned, maintained, controlled, or operated by Google, Inc., headquartered at 1600 Amphitheater Parkway, Mountain View, California, as more particularly described in Attachment A.

The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized)*: See Attachment B for the Items to be Seized, all of which constituted fruits, contraband, evidence and instrumentalities of a violation of Title 18, United States Code, Section 1343, as set forth in the attached affidavit, and all of which are more fully described in the application and affidavit filed in support of this warrant, the allegations of which are adopted and incorporated by reference as if fully set forth herein.

The basis for search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☒ evidence of a crime;
- ☒ contraband, fruits of crime, or other items illegally possessed;
- ☒ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of **18 U.S.C. § 1343**, and the application is based on these facts which are continued on the attached sheet:

- ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

CURTIS E. RYAN, SPECIAL AGENT
DEPARTMENT OF HOMELAND SECURITY
*Printed name and title*

Sworn to before me and signed in my presence.

Date:  October 13 , 2015

_____
*Judge's signature*

HONORABLE MARIAN W. PAYSON
UNITED STATES MAGISTRATE JUDGE
*Printed name and Title*

City and state:  Rochester, New York

## ATTACHMENT A

### Premises to Be Searched

This warrant applies to information associated with dwmiedel@gmail.com that is stored at premises controlled by Google, Inc., 1600 Amphitheatre Parkway, Mountain View, CA 94043.

## ATTACHMENT B

### Particular Things to be Seized

**I.    Information to be disclosed by Google, Inc. (the "Provider")**

To the extent that the information described herein is within the possession, custody, or control of the Provider, including any emails, records, files, logs, or information that has been deleted, but is still available to the Provider, or has been preserved pursuant to a request made under 18 U.S.C. § 2703(f) on September 17, 2015, the Provider is required to disclose the following information to the government for each account or identifier listed in Attachment A:

a.    The contents of all emails associated with the account that relate to dwmiedel@gmail.com, including stored or preserved copies of emails sent to and from the account, draft emails, the source and destination addresses associated with each email, the date and time at which each email was sent, and the size and length of each email;

b.    All records or other information regarding the identification of the account, to include full name, physical address, telephone numbers and other identifiers, records of session times and durations, the date on which the account was created, the length of service, the IP address used to register the account, log-in IP addresses associated with session times and dates, account status, alternative email addresses provided during registration, methods of connecting, log files, and means and source of payment (including any credit or bank account number);

c.    The types of service utilized;

d.    All records or other information stored at any time by an individual using the account, including address books, contact and buddy lists, calendar data, pictures, and files;

e.      All records pertaining to communications between the Provider and any person regarding the account, including contacts with support services and records of actions taken.

## II.      Information to be seized by the government

All information described above in Section I that constitutes fruits, contraband, evidence and instrumentalities of violations of 18 U.S.C. §1343, those violations involving DAVID MIEDEL and occurring after January 1, 2014, including, for each account or identifier listed on Attachment A, information pertaining to the following matters:

a.      Communications related to the sale or purchase of printer, copier and fax supplies.  Communications related to the shipment or receipt of printer, copier and fax supplies.  Communications related to payments made for the purchase of printer, copier and fax supplies.  Communications related to the export of printer, copier and fax supplies.

b.      Information relating to who created, used, or communicated with the account, including records about their identities and whereabouts.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| In the matter of the search of Google, Inc. e-mail and communication account associated with <u>dwmiedel@gmail.com</u> stored at a premises owned, maintained, controlled, or operated by Google, Inc., headquartered at 1600 Amphitheater Parkway, Mountain View, California. | Case No. *15-mj-4168*<br><br>**Filed Under Seal** |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, CURTIS E. RYAN, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.       I make this affidavit in support of an application for a search warrant for information associated with a certain account that is stored at premises controlled by Google, Inc., an email provider located at 1600 Amphitheatre Parkway, Mountain View, California 94043.  The account to be searched is described in the following paragraphs and in Attachment A.  This affidavit is made in support of an application for a search warrant pursuant to 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Google, Inc. to disclose to the government copies of the information (including the content of communications) further described in Section I of Attachment B.  Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

2.      I am a Special Agent with the Department of Homeland Security, Immigration and Customs Enforcement (ICE), Homeland Security Investigations (HSI). I have been employed by HSI as a Special Agent since February, 2012. I previously worked as a Special Agent in the Department of Defense and the Department of Justice. I have been employed as a Special Agent since 1999. I am currently assigned to the HSI Office of the Special Agent in Charge (SAC) Buffalo, New York. As part of my daily duties as a Special Agent with HSI, I investigate crimes involving violations of federal law, including violations of Title 18, United States Code, Section 1343 (fraud by wire).

3.      This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4.      Based on my training and experience, and the facts as set forth in this affidavit, there is probable cause to believe that evidence, instrumentalities, contraband and/or fruits pertaining to violations of Title 18, United States Code, Section 1343 (fraud by wire) as described in Attachment B resides in the account described in Attachment A.

## JURISDICTION

5.      This Court has jurisdiction to issue the requested warrant, or it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

2

## RELEVANT STATUTES

6.     This investigation concerns violations of Title 18, United States Code, Section 1343, relating to fraud by wire.

7.     Title 18 United Stated Code, Section 1343 makes it a crime for any person, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, to transmit or cause to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice.

## XEROX

8.     Xerox Corporation entrusts their branded toner to customers who have entered into a lease contract for office equipment.  These leases are created through various sales channels, but ultimately, the customer is a 'Xerox customer'.  As part of the customer's lease, the customer is invoiced a flat rate per month for the office equipment that the customer has selected for their operation.  This equipment includes printers, copiers, scanners, multifunction devices and graphic arts production equipment.  These monthly flat rate lease rates range from several hundred dollars per month to several thousand based on the retail price of the equipment.  For the customer to operate each piece of equipment, the equipment requires toner, print drums, fuser products, etc. (hereinafter, 'supplies').  These supplies can be expensive to buy individually, so Xerox offers an 'all-inclusive' contract

3

where Xerox provides these supplies as part of the customer's contract. The supplies remain the property of Xerox until consumed in the leased equipment. However, the customer can order as much supplies as they need to keep their equipment operational. Some office equipment consumes more supplies than others, so each customer may carry a different level of supplies inventory for their equipment. At the end of the customer's term lease, the supplies are picked up by a logistics company. The logistics company will take the office equipment that came off of the customer's lease along with any of the supplies for that equipment that are in the customer's possession. Both the equipment and the supplies are returned to the logistics company's depot/warehouse where they are consolidated and reshipped back to Xerox. Once returned to Xerox, Xerox then restocks the equipment and supplies and re-distributes to customers on current lease contracts. At all times, unused supplies remain the property of Xerox.

## PROBABLE CAUSE

### NORTH CAROLINA

9.      On July 30, 2015, DAVID MIEDEL contacted an employee of Ryder System (hereinafter, "RE1") who worked at the Ryder System warehouse located at 2211 Distribution Center Drive, Suite H, Charlotte, North Carolina 28269 via the online social network LinkedIn. MIEDEL requested RE1 add him as a LinkedIn connection. On July 31, 2015 MIEDEL sent RE1 a message via LinkedIn asking RE1 to call him at telephone number (812) 327-1091.

10.     On August 11, 2015, DAVID MIEDEL called a second employee of Ryder System (hereinafter, "RE2") who worked at the same Ryder System warehouse located at 2211 Distribution Center Drive, Suite H, Charlotte, North Carolina 28269.  During the phone call, MIEDEL informed RE2 that he had already spoken to RE1, who worked at the same warehouse as RE2.  MIEDEL stated that RE1 referred him to RE2.  MIEDEL informed RE2 he wanted to purchase the returned Xerox supplies that were being stored at the Ryder System warehouse where RE2 worked.  MIEDEL stated that he would pay RE2 in cash for the Xerox supplies so that no paper trail would lead back to MIEDEL or RE2.  MIEDEL also stated he removes the hologram serial number stickers from the Xerox supplies so that the products cannot be tracked by Xerox.  RE2 agreed to provide MIEDEL with ten (10) large boxes full of Xerox supplies on August 14, 2015.  MIEDEL stated that he would pay RE1 and RE2 $6,000.00 cash for the ten (10) boxes of Xerox supplies in $100.00 denominations so that the cash could easily be split amongst RE1 and RE2.

11.     On August 11, 2015, DAVID MIEDEL sent RE1 a LinkedIn message.  In the message, MIEDEL asked RE1 to, "Please email me pictures of the gaylords at dwmiedel@gmail.com."  A Gaylord is a cardboard shipping container in which Ryder packs Xerox supplies that are being returned to Xerox.  RE1 sent nine photographs to MIEDEL at dwmiedel@gmail.com on August 12, 2105.

12.     On August 12, 2015 MIEDEL emailed the following to RE1 from email address dwmiedel@gmail.com:

5

> *Thanks for the pics. It does not look like there are 10 full gaylords. I see a handful of*
> *them but even those are not full as they appear to be tossed in not really stacked. This*
> *tossing in unfortunately takes up valuable space. But if they were all neat stacked then*
> *they would be true full gaylords.*
>
> *Can you take more pics of any others that you may not have sent me?*
> *Even pics that show more of the actual items inside the gaylords would also help.*
> *David*

13.     On August 28, 2015, DAVID MIEDEL sent RE1 an electronic message
stating the following in part:

> *Just so you are aware I removed you from being a contact in Linkedin as a safety*
> *precaution. That way it never shows we are connected or even if someone is viewing my*
> *profile it might have shown that they we have some of the same connections, it is just*
> *another safety measure.*
>
> *I hope you have some product and I should be able to come down next week.*
>
> *Dave*

14.     On September 10, 2015, DAVID MIEDEL emailed RE1 from
dwmiedel@gmail.com.  The email stated:

> *Could you give me the address to the warehouse*
> *David*

6

15.     On September 11, 2015, DAVID MIEDEL traveled to the Ryder Systems warehouse located at 2211 Distribution Center Drive, Suite H, Charlotte, North Carolina 28269 to purchase the Xerox supplies from RE1 and RE2. MIEDEL arrived at the Ryder Systems warehouse in sport utility vehicle towing an enclosed trailer. MIEDEL met with RE1 and RE2 and they brought MIEDEL into the warehouse. Inside the warehouse, MIEDEL purchased ninety-two (92) units of Xerox supplies from RE1 and RE2. MIEDEL gave $900.00 cash to RE1 and $900 cash to RE2 for the Xerox supplies. MIEDEL loaded the Xerox supplies into the trailer that was attached to the Subject Vehicle. During the interaction between MIEDEL, RE1 and RE2, MIEDEL stated that he would be taking the Xerox supplies he had purchased that day back to his home in Michigan. MIEDEL stated he would inventory the Xerox supplies and create a list he would then email to his buyers. He would negotiate the sale of the supplies over email. His buyer would then email him a bill of lading with shipping instructions for the supplies. MIEDEL asked RE1 and RE2 if they had a list of businesses whose contracts were about to end. He told RE1 and RE2 a Canon employee emails him a list of Canon contracts that are about to end. MIEDEL said he then visits the businesses on the list and attempts to purchase their supplies before they are returned to Canon. MIEDEL also stated that he would be traveling from Michigan to Webster, New York the following week to purchase similar Xerox supplies from Joe. MIEDEL departed the area in his vehicle with the Xerox supplies inside of the trailer. All of the actions described in this paragraph were observed by HSI Buffalo and HSI Charlotte special agents.

**NEW YORK**

16.     On August 25, 2015, DAVID MIEDEL called Joe, who MIEDEL believed to
be an employee of Ryder System in Webster, New York.  MIEDEL informed Joe he
received Joe's phone number from an unnamed associate of Joe.  MIEDEL introduced
himself to Joe and stated he wanted to purchase the returned Xerox supplies that were being
stored at the Ryder System warehouse where Joe worked.  Joe informed MIEDEL that he
was at work and had to call MIEDEL back.

17.     Later on August 25, 2015, Joe called DAVID MIEDEL back.  During the
phone call, Joe stated that he was responsible for the Xerox supplies at the Ryder System
warehouse where Joe worked.  Joe asked MIEDEL how much Xerox supplies MIEDEL
wanted to purchase.  MIEDEL informed Joe that depending upon the size of the operation
at the warehouse where Joe worked, that MIEDEL would either bring his "4Runner" to
pick up the Xerox supplies or rent a U-Haul truck.  Joe asked MIEDEL where he would be
driving from.  MIEDEL informed Joe that he would be driving from Lansing, Michigan.
MIEDEL also informed Joe that if all went well, MIEDEL would drive to New York once
every week or two to purchase additional Xerox supplies.

18.   On August 25, 2015, MIEDEL emailed Joe from email address
dwmiedel@gmail.com.  The email stated:

> **Subject: Xerox list**
>
> *Docucolor 240 color drums and fusers*
> *Docucolor 550 color drums and fusers*
> *Xerox 700 digital press color drums and fusers*

*Xerox dc5000 black drum*
*Xerox color j75,c75 color drums*
*IGen toners, drums etc*
*Phaser 3600 black toner high capacity  106r0001371*
*Phaser 4510 high capacity toners and drums*
*Phaser 7400 imaging units all colors*
*Phaser 7760 Fuser and imaging units and toners*
*Workcentre 5225 drums and fusers*
*Work centre 5665 drums, fusers*
*Workcentre 5865/5875. Black toner*
*Work centre 5840/5845 black toner*
*Work centre 7132 drums*
*Workcentre 7120 black toner and color toner*
*Work centre 4150 drums*
*Docucolor 700 fusers, drums*

*Joe*

*These machines are just some of the ones I look for. There are others but imaging units,*

*drums, fusers, solid inks-- which are very small boxes, these are the most popular for*

*me. Toner is always great too.*

*Dave*

19.     On September 8, 2015, DAVID MIEDEL called Joe.  During the phone call,

MIEDEL and Joe agree that MIEDEL should come to purchase the Xerox supplies from

Joe on September 15, 2015.  MIEDEL also stated that he removes the hologram serial

number stickers from the Xerox supplies when he gets the supplies to his warehouse.

MIEDEL also asked Joe if he would be able to get him three (3) to four (4) pallets worth of

Xerox supplies for the upcoming purchase.

20.     On September 15, 2015, DAVID MIEDEL traveled to the Western District of

New York and met with Joe and an undercover (UC) HSI Special Agent.  During the

9

meeting, MIEDEL paid Joe $1,000.00 USD and the UC $1,000.00 USD for 198 Xerox items MIEDEL believed were stolen from Ryder System. Xerox corporate security representatives valued the supplies at $51,619.34 USD.

21.     On September 17, 2015, I served an electronic records preservation request on Google, Inc., pursuant to 18 U.S.C. 2703(f) for any and all subscriber information, profiles, account contents, email records (saved mail, sent mail, received mail, deleted mail, drafts, folders, etc.), log records of account access and any identifying Internet Protocol (IP) addresses to include times and dates of any and all access for email address dwmiedel@gmail.com.

22.     On October 5, 2015, I viewed DAVID MIEDEL's publically available LinkedIn profile. MIEDEL's profile identifies him as the owner of Print Supplies Acquisition, a Lansing, Michigan area retail business, from January 2014 to present. The profile stated his, "Primary focus is purchasing old/surplus stock of consumables for any brand copier, printer or fax. This helps keep the supplies from the landfills and can leave a smaller footprint behind. Toners, drums, fuses, staples, ink, etc. HP, Lexmark, Ricoh, Xerox, sharp, Panasonic, Canon, Toshiba, Savin, Samsung, Kyocera, Okidata, Brother, Dell, Epson, Konica Minolta."

23.     On October 5, 2015, I conducted Internet searches and searched public records for a business named Print Supplies Acquisition in Lansing, Michigan. I could not

locate any public records related to a business named Print Supplies Acquisition in Lansing,

Michigan.  The only positive Internet result was DAVID MIEDEL's LinkedIn profile.

24.     Based on the above information, I respectfully submit there is probable cause

to believe that:

a.      DAVID MIEDEL did knowingly and willfully violate
U.S. law, specifically 18 U.S.C. §1343 (fraud by wire);
that MIEDEL engaged in a scheme to defraud and to
obtain property by means of false or fraudulent
pretenses, representations, or promises; and that he then
transmitted or caused to be transmitted by means of
wire, radio, or television communication in interstate or
foreign commerce, writings, signs, signals, pictures, or
sounds for the purpose of executing such scheme.

b.      Evidence of MIEDEL's illegal communications will be
found in dwmiedel@gmail.com.

**BACKGROUND CONCERNING EMAIL**

25.     In general, an email that is sent to an email subscriber is stored in the

subscriber's "mail box" on the email provider's servers until the subscriber deletes the email.

If the subscriber does not delete the message, the message can remain on the email

provider's servers indefinitely. Even if the subscriber deletes the email, it may continue to be

available on the email provider's servers for a certain period of time.

26.     In my training and experience, I have learned that Google, Inc. provides a

variety of on-line services, including electronic mail ("email") access, to the public.  Google,

Inc. allows subscribers to obtain email accounts at the domain name gmail.com, like the

email account listed in Attachment A.  Subscribers obtain an account by registering with

11

Google, Inc.  During the registration process, Google, Inc. asks subscribers to provide basic personal information.  Therefore, the computers of Google, Inc. are likely to contain stored electronic communications (including retrieved and retrieved email for Google, Inc. subscribers) and information concerning subscribers and their use of Google, Inc. services, such as account access information, email transaction information, and account application information.  In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users.

27.     A Google, Inc. subscriber can also store with the provider files in addition to emails, such as address books, contact or buddy lists, calendar data, pictures (other than ones attached to emails), and other files, on servers maintained and/or owned by Google, Inc.  In my training and experience, evidence of who was using an email account may be found in address books, contact or buddy lists, email in the account, and attachments to emails, including pictures and files.

28.     In my training and experience, email providers generally ask their subscribers to provide certain personal identifying information when registering for an email account.  Such information can include the subscriber's full name, physical address, telephone numbers and other identifiers, alternative email addresses, and, for paying subscribers, means and source of payment (including any credit or bank account number).  In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users.

12

29.     In my training and experience, email providers typically retain certain transactional information about the creation and use of each account on their systems. This information can include the date on which the account was created, the length of service, records of log-in (i.e., session) times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to the account (such as logging into the account via the provider's website), and other log files that reflect usage of the account. In addition, email providers often have records of the Internet Protocol address ("IP address") used to register the account and the IP addresses associated with particular logins to the account. Because every device that connects to the Internet must use an IP address, IP address information can help to identify which computers or other devices were used to access the email account.

30.     In my training and experience, in some cases, email account users will communicate directly with an email service provider about issues relating to the account, such as technical problems, billing inquiries, or complaints from other users. Email providers typically retain records about such communications, including records of contacts between the user and the provider's support services, as well records of any actions taken by the provider or user as a result of the communications. In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users.

31.     I ask that the Court order Google, Inc. to deliver the information requested within 10 days of the service of the warrant, and that the Google, Inc. send the information via United States mail or another courier service, and where maintained in electronic form notwithstanding 18 U.S.C. § 2252A or similar statute or code, on CD-ROM or an equivalent electronic medium to:

> Curtis Ryan
> Special Agent
> U.S. Immigration and Customs Enforcement
> 130 Delaware Avenue
> Buffalo, NY 14202
> Phone:(716)843-7535
> Fax:(716)551-4920

OR VIA EMAIL TO:

> Curtis.e.ryan@ice.dhs.gov

32.     Pursuant to Title 18, United States Code, Section 2703(g) my presence, or the presence of an agent, is not required for service or execution of a warrant issued under Title 18, United States Code, Section 2703.

## **REQUEST FOR NON-DISCLOSURE BY PROVIDER**

33.     Pursuant to Title 18, United States Code, Section 2705(b), I request that the Court enter an order commanding Google, Inc. not to notify any other person, including the subscriber of the SUBJECT ACCOUNT, of the existence of the warrant, because there is reason to believe that notification of the existence of the warrant will result in destruction or tampering with evidence or otherwise seriously jeopardize the investigation.  In addition, if Google, Inc. or other person notifies the target of the investigation that a warrant has been

14

issued on the SUBJECT ACCOUNT, the person will further mask their activity and seriously jeopardize the investigation.

## CONCLUSION

34.    Based on the forgoing, I request that the Court issue the search warrant for dwmiedel@gmail.com.  Because the warrant will be served on Google, Inc., who will then compile the requested records at a time convenient to it, there exists reasonable cause to permit the execution of the requested warrant at any time in the day or night.

## REQUEST FOR SEALING

35.    I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court.  These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation.  Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

Respectfully submitted,

CURTIS E. RYAN
Special Agent
Homeland Security Investigations

Subscribed and sworn to before me on
October 13, 2015

HONORABLE MARIAN W. PAYSON
UNITED STATES MAGISTRATE JUDGE

15

## ATTACHMENT A

### Premises to Be Searched

This warrant applies to information associated with dwmiedel@gmail.com that is stored at premises controlled by Google, Inc., 1600 Amphitheatre Parkway, Mountain View, CA 94043.

## ATTACHMENT B

### Particular Things to be Seized

I.      **Information to be disclosed by Google, Inc. (the "Provider")**

To the extent that the information described herein is within the possession, custody, or control of the Provider, including any emails, records, files, logs, or information that has been deleted, but is still available to the Provider, or has been preserved pursuant to a request made under 18 U.S.C. § 2703(f) on September 17, 2015, the Provider is required to disclose the following information to the government for each account or identifier listed in Attachment A:

a.      The contents of all emails associated with the account that relate to dwmiedel@gmail.com, including stored or preserved copies of emails sent to and from the account, draft emails, the source and destination addresses associated with each email, the date and time at which each email was sent, and the size and length of each email;

b.      All records or other information regarding the identification of the account, to include full name, physical address, telephone numbers and other identifiers, records of session times and durations, the date on which the account was created, the length of service, the IP address used to register the account, log-in IP addresses associated with session times and dates, account status, alternative email addresses provided during registration, methods of connecting, log files, and means and source of payment (including any credit or bank account number);

c.      The types of service utilized;

d.      All records or other information stored at any time by an individual using the account, including address books, contact and buddy lists, calendar data, pictures, and files;

1

e.      All records pertaining to communications between the Provider and any person regarding the account, including contacts with support services and records of actions taken.

## II.      Information to be seized by the government

All information described above in Section I that constitutes fruits, contraband, evidence and instrumentalities of violations of 18 U.S.C. §1343, those violations involving DAVID MIEDEL and occurring after January 1, 2014, including, for each account or identifier listed on Attachment A, information pertaining to the following matters:

a.      Communications related to the sale or purchase of printer, copier and fax supplies.  Communications related to the shipment or receipt of printer, copier and fax supplies.  Communications related to payments made for the purchase of printer, copier and fax supplies.  Communications related to the export of printer, copier and fax supplies.

b.      Information relating to who created, used, or communicated with the account, including records about their identities and whereabouts.

3

## CERTIFICATE OF AUTHENTICITY OF DOMESTIC BUSINESS RECORDS PURSUANT TO FEDERAL RULE OF EVIDENCE 902(11)

I, _____, attest, under penalties of perjury under the laws of

the United States of America pursuant to 28 U.S.C. § 1746, that the information contained

in this declaration is true and correct.  I am employed by Google, Inc., and my official title

is _____.  I am a custodian of records for Google, Inc.  I state

that each of the records attached hereto is the original record or a true duplicate of the

original record in the custody of Google, Inc., and that I am the custodian of the attached

records consisting of _____ (pages/CDs/kilobytes). I further state that:

    a.     all records attached to this certificate were made at or near the time of the

occurrence of the matter set forth, by, or from information transmitted by, a person with

knowledge of those matters;

    b.     such records were kept in the ordinary course of a regularly conducted

business activity of Google, Inc.; and

    c.     such records were made by Google, Inc. as a regular practice.

    I further state that this certification is intended to satisfy Rule 902(11) of the Federal

Rules of Evidence.

_____          _____

Date                                                        Signature

4